UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA CARRERA,<br><br>                Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, et al.,<br><br>                Defendants. | Case No. 1:19-cv-00536-LJO-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' REQUEST TO STAY BE DENIED AND THAT PLAINTIFF'S MOTION TO REMAND BE GRANTED<br><br>(ECF Nos. 7, 10) |

      Plaintiff, Dana Carrera, initiated this action in state court in September 2017. In April 2019, Defendants removed the action to federal court. Before the Court is Defendants' request to stay proceedings (ECF No. 7) and Plaintiff's motion to remand (ECF No. 10). The Court recommends that Defendants' request to stay be denied and that Plaintiff's motion to remand be granted.

**I.    BACKGROUND**

    **A.  Thousands of Pending Talc Cases**

      This case is one of thousands of personal injury and wrongful death actions filed in state courts across the United States against Defendants Johnson & Johnson and related companies (collectively "J&J"), claiming that asbestos-containing talcum powder ("talc") used in J&J's products caused the plaintiffs to develop cancer.

1

In February 2019, J&J's suppliers of talc, Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (collectively "the Debtors"), commenced Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. *See In re Imerys Talc America, et al.*, Case No. 19-10289 (Bankr. D. Del.). On April 18, 2019, J&J filed in the bankruptcy proceeding a motion to fix venue in Delaware. In this motion, J&J petitions the bankruptcy court to transfer all talc-related state and federal actions to Delaware for resolution pursuant to 28 U.S.C. § 157(b)(5) and § 1334. *See In re Imerys Talc America, et al.*, Case No. 19-10289, Motion to Fix Venue (Bankr. D. Del. Apr. 18, 2019). Also in April 2019, J&J began removing to federal courts many of the talc cases that were pending in state courts across the nation, contending that removal was appropriate because the talc cases are "related to" the Debtors' bankruptcy proceeding. To date, hundreds of these removed cases have been remanded to the state courts from which they were removed, including 313 cases in California. *See, e.g., In re Removed State Court Talc Actions v. Johnson & Johnson*, 2019 WL 2191808 (C.D. Cal. May 21, 2019) (remanding 42 talc-related cases); ECF No. 14 (providing copies of decisions in 89 additional cases from the Central District of California that have been remanded to state court); ECF No. 19 (providing a list of 344 talc-related cases that have been remanded to date); ECF No. 21 at 5 ( noting that 382 individual cases have been remanded to date and that more are being remanded daily and providing list of remanded cases); ECF No. 21-1 (providing list of remanded cases and copies of selected district court remand orders).

**B. Dana Carrera's Talc Case**

Turning to the present case, Plaintiff, Dana Carrera, was diagnosed with malignant peritoneal mesothelioma in March 2017, and is terminally ill. "Her prognosis is poor and her health is declining." (ECF No. 10-2 at 2.) Those who suffer from mesothelioma "generally [die] within two years of diagnosis." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996).

On September 1, 2017, Ms. Carrera initiated this case in California state court against J&J and other defendants, including the Debtors. Ms. Carrera alleges that the malignant peritoneal mesothelioma from which she suffers was "caused by exposure to asbestos from

Defendants' Products and/or from the use of Defendants' Products." (ECF Nos. 1-1 at 14, 10-1 at 10; 10-2 at 2.)

In February 2019, after the Debtors filed their bankruptcy petition, Ms. Carrera dismissed the Debtors from the action. After this dismissal, the case continued to proceed toward trial, which was set to begin on April 29, 2019. On April 11, 2019, the parties stipulated to continue the trial date to September 2019, principally due to scheduling. By the time the parties entered this stipulation, fact discovery had closed except for two depositions, and expert discovery was well underway and partially completed. At no time during the parties' negotiation to continue the trial did J&J indicate it intended to remove the action to federal court. (ECF No. 10-2 at 2-3.)

A week later, on April 18, 2019, J&J filed its motion to fix venue in the Debtors' bankruptcy proceeding, seeking to have the vast majority of talc cases pending all over the nation transferred to Delaware. Five days later, on April 23, 2019, J&J removed the action to federal court on the basis that the case is "related to" the Debtors' bankruptcy proceeding. On April 26, 2019, J&J filed its request that this case be stayed until the bankruptcy court in the Debtors' bankruptcy proceeding addresses J&J's venue motion in which J&J seeks to have this case transferred along with thousands of other talc cases to Delaware. (ECF No. 7.) On May 6, 2019, Ms. Carrera filed a motion to remand her case to state court. (ECF No. 10.)

## II. DISCUSSION

### A. J&J's Motion to Stay

J&J has requested that the Court stay this matter until the bankruptcy court presiding over the Debtors' bankruptcy proceeding rules on J&J's pending motion to fix venue in Delaware. (ECF No. 7.) J&J's motion to fix venue is based on 28 U.S.C. §§ 157(b)(5) and 1334(b).

Section 157(b)(5) provides "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). This provision "is not jurisdictional." *Stern v.*

*Marshall*, 564 U.S. 462, 464 (2011). Thus, although the District of Delaware has the authority to determine venue, this authority does not deprive this Court from addressing the propriety of the removal of this case from state court. The request to stay should therefore be denied.

**B. <u>Jurisdiction</u>**

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "This burden is particularly stringent for removing defendants because '[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'" *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017) (citation omitted).

Here, J&J contends there is jurisdiction over this removed action because the action is "related to" the Debtors' bankruptcy case based on indemnification agreements and shared insurance between J&J and the Debtors, and because there is a "unity of interest" between J&J and the Debtors.

Under 28 U.S.C. § 1452(a), a party may remove a civil claim or cause of action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Under § 1334, federal district courts have original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(b).

To determine whether a case is "related to" a bankruptcy proceeding, the Ninth Circuit has adopted the test set out by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).[1] *See In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The *Pacor* test provides:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the

---

[1] *Pacor* has been overruled in part on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

4

> proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
>
> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction. "[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist."

*Pacor*, 743 F.2d at 994.

Indemnification agreements and shared insurance may, under certain circumstances, give rise to "related to" jurisdiction. *See id.* However, where such agreements do not create automatic liability of the debtor and instead would require a subsequent action to resolve liability, "related to" jurisdiction is lacking. *See id.*

The Court has reviewed the provisions of the agreements cited by J&J and finds these provisions insufficient to give rise to "related to" jurisdiction. (*See* ECF No. 1-6 (Nolan Decl.); ECF No. 1-7 at Ex. 2 § 10 and Ex. 3 § 7.) These provisions are not automatically triggered as argued by J&J, and there are cross-indemnification provisions in which J&J has agreed to indemnify the Debtors. (*See* ECF No. 1-7 at Ex. 2 § 11 and Ex. 3 § 7.) Thus, contrary to the assertion of J&J, a subsequent action to resolve liability as between J&J and the Debtors will be needed. Further, without a finding of liability in the present case, any potential for indemnification by the Debtors is speculative and hypothetical. The indemnification provisions are, accordingly, insufficient to give rise to "related to" jurisdiction. *See Pacor*, 734 F.2d at 995; *see also In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

Moreover, J&J has repeatedly stated in disclosures and discovery responses in this case and other talc cases that its insurance policies were "unlikely to be implicated," by the case and that the insurance and indemnity provisions were "not relevant." *See Removed State Court Talc Actions v. Johnson & Johnson*, 2019 WL 2191808, at *3; ECF No. 10-2 at 4, 6-7; *id.* at 56-148

(Exs. E-H ). These disclosures and responses support the Court's determination that the indemnity provisions are insufficient to support "related to" jurisdiction and demonstrate that the shared insurance policies are also insufficient to support "related to" jurisdiction.

Finally, J&J argues that "related to" jurisdiction exists because there is a "unity of interest" between J&J and the Debtors. J&J contends that because the Debtors were the exclusive suppliers of the talc used in the J&J products at issue here, there is a unity or identity of interest between J&J and the Debtors, and that the "Debtors are, effectively, the true party in interest in" this action. (ECF No. 17 at 21- 25.) The Court disagrees.

The Debtors are no longer parties to this action, having been dismissed in February 2019, and there is no indication that J&J objected to this dismissal, nor that J&J tried to ensure that the Debtors remained parties to this action. Indeed, following dismissal of the Debtors, the case was proceeding, discovery was continuing, and the trial had been set. All of this indicates that the disposition of this case will not impair or impede the Debtor's interests and that the Debtors are not the "true party in interest" in this action. *See* Cal. Code of Civ. P. 389 (with some exceptions, requiring joinder of a party who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest"). Moreover, Ms. Carrera is no longer bringing any claims against the Debtors, and most if not all of the claims she brings against J&J do not appear to implicate the Debtors. Those claims include failure to warn or instruct of known and knowable dangers and risks of using and of exposure to the products; failure to test the products and investigate the hazards of the products; failure to recall and/or retrofit the products; and failure to obtain suitable alternative materials to asbestos for use in products. (*See* ECF No. 1-1 at 12, 19.)

J&J has not met its burden of establishing that this Court has jurisdiction over this action under 28 U.S.C. § 1334(b) as a case "related to" a bankruptcy proceeding under Title 11. Accordingly, remand is appropriate based on lack of jurisdiction over this action.

Alternatively, even assuming that the present action is "related to" the bankruptcy proceeding and that the Court therefore has jurisdiction over this action, remand is appropriate on equitable grounds under 28 U.S.C. § 1452(b).

**C. Equitable Remand**

Once a case has been removed to federal court under 28 U.S.C. § 1452(a), the court to which the case has been removed "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). An order entered under § 1452(b) "remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise . . . ." *Id.*

Factors to consider in determining whether to grant an equitable remand include,

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*In re Cedar Funding, Inc.*, 419 B.R. 807, 821 (B.A.P. 9th Cir. 2009) (citation omitted). "Because Section 1452(b) affords "an unusually broad grant of authority," any one of the relevant factors may provide a sufficient basis for equitable remand." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 311 (C.D. Cal. 2010); *see McCarthy v. Prince*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) (§ 1452b's "'any equitable ground' remand standard is an unusually broad grant of authority").

Here, the equities weigh strongly in favor of remand. Ms. Carrera was diagnosed with malignant peritoneal mesothelioma in March 2017. She is terminally ill, her prognosis is poor and her health is declining. She seeks to have her day in court as soon as possible. She filed this action in California state court in September 2017, raising only state law claims, and the case was litigated in state court for over 19 months. In February 2019, after the Debtors filed their

bankruptcy petition, they were dismissed from this action, and the case proceeded without any objection or other indication from J&J that proceeding without the Debtors as parties was inappropriate, or that the case was in any way "related to" or otherwise impacted the bankruptcy proceeding. Discovery was nearly completed, with fact discovery closed except for two depositions, and expert discovery well underway and partially completed. Trial was set to begin in state court on April 29, 2019.

While the parties were negotiating, presumably in early April 2019, to continue the case to September 2019, the continuance was sought principally due to scheduling—at no time did J&J indicate its intent to remove the action to federal court and transfer the case across the country to Delaware. Then, a week after obtaining the continuance, on April 18, 2019, J&J filed its motion in the bankruptcy proceeding to fix venue in Delaware, and five days later, on April 23, 2019, J&J removed this action to federal court, and sought to stay the case pending a decision from the bankruptcy court on the venue motion. There is no doubt in the Court's mind that at the time J&J negotiated the continuance of trial in this case, it intended to remove the action to federal court for the purpose of seeking a transfer across the country to Delaware, and centralized adjudication of the approximately 2,400 pending state court talc-related cases for trial in Delaware. This maneuvering appears to be blatant forum shopping and an attempt by J&J to consolidate state court actions from all over the country in a single forum for the convenience of J&J. *See Ginsburg v. Johnson & Johnson*, 1:19-cv-759-LMM, Order entered June 5, 2019 (remanding case to state court on equitable grounds, stating: "That J&J is merely attempting to forum shop and to consolidate state court actions from all over the country in a single forum is obvious to all involved.").[2]

The removal and potential transfer of this case to Delaware would also impose extraordinary inconvenience on Ms. Carrera and delay resolution of Ms. Carrera's claims by months or potentially years. Ms. Carrera is terminally ill with declining health and does not have months or years. If her case is transferred to Delaware, she may not live to see her case

---

[2] A copy of this decision can be found at ECF No. 21-1 at 36.

heard. J&J's removal has thus risked depriving Ms. Carrera of her day in court.

J&J argues, however, that efficient administration of the Debtors' bankruptcy estate favors denial of remand:

> Here, the flood of personal injury and wrongful death claims arising out of alleged exposure to the Debtors' talc caused the filing of the Debtors' Chapter 11 Case. These claims' resolution will impact the bankruptcy estates, and thus are "related to" Debtors' bankruptcy. Therefore, they will also impact the overall theory, timing, and implementation of any chapter 11 plan. With this in mind, J&J removed this action and invoked § 157(b)(5) in pursuit of a centralized venue for adjudication of the threshold issues, that will result in equitable and uniform outcomes on those threshold issues for the Debtors' creditors—including the thousands of plaintiffs prosecuting similar claims and actions across the country—the Debtors' themselves, and J&J. Such adjudication will promote efficiency and preservation of judicial resources.

(ECF No. 17 at 29-30.)

In support of its argument, J&J cites to the indemnification provisions between J&J and the Debtors, and a shared insurance policy. (*See* ECF No. 17 at 23-24.) However, as discussed previously, these provisions do not give rise to "related to" jurisdiction, and J&J has repeatedly stated in disclosures and discovery responses in this and other talc-related cases that its insurance policies were "unlikely to be implicated," by the action and that the insurance and indemnity provisions were "not relevant." *See Removed State Court Talc Actions v. Johnson & Johnson*, 2019 WL 2191808, at *3; ECF No. 10-2 at 4, 6-7; *id.* at 56-148 (Exs. E-H ). Moreover, as previously discussed, Ms. Carrera brings no claims against the Debtors, and most if not all of the claims Ms. Carrera brings against J&J do not appear to implicate the Debtors. To the extent J&J is entitled to contribution from the Debtors, it can assert a claim against the Debtors' estate in the bankruptcy proceeding.

The Court finds that the equities weigh strongly in favor of remanding this case to state court.[3]

## III. RECOMMENDATIONS

Based on the foregoing, the Court RECOMMENDS:

---

[3] Ms. Carrera raises several other arguments in support of her motion for remand. Because the Court finds remand proper based both on lack of jurisdiction and on equitable grounds under 28 U.S.C. § 1452(b), the Court does not address Ms. Carrera's remaining grounds for remand.

1. That Defendants' motion to stay (ECF No. 7) be DENIED.
2. That Plaintiff's motion to remand (ECF No. 10) be GRANTED and that this action be REMANDED to state court based on lack of jurisdiction or, alternatively, based on equitable grounds under 28 U.S.C. § 1452(b).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after entry of these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the right to challenge the magistrate judge's factual findings on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **June 17, 2019**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE